May be seated. Good morning, ladies and gentlemen. This is Michael Balding v. Thomas Tarter, case number 4-12-1030. Attorney DeSant Foll is here on behalf of the appellant, and Attorney Unrath is here on behalf of the appellee. Attorney Haas, are you splitting your time? Yes, we are. All right. Have you let the clerk know? No, we have not. All right. Mr. DeSant Foll, you may proceed. May it please the Court, Counsel, we raised three major issues in this appeal, all of which were ignored by the defendant. The first issue we raised was Dr. Tarter's admission that he was responsible for the plaintiff's injury. This was, at the very least, an evidentiary admission which barred the award of summary judgment. Since Dr. Tarter is a physician, he is more competent than anyone who is to discuss who is responsible for the plaintiff's injury. Interpreted in a light most favorable to the plaintiff, it must be regarded as at least some evidence that there is liability, because in everyday parlance, responsibility for an injury means answerable, liable, and accountable. Now, Dr. Tarter didn't have to say that, but he did. He told the plaintiff, I am responsible for your injury. That is an evidentiary admission. And the defendant never addressed that issue in his brief. The defendant disregarded it, but disregarding it has the effect of filing no brief at all. The only argument that the defense raised in regard to Dr. Tarter's admission was to contend that it wasn't a judicial admission. Well, as we all know, a judicial admission is a separate entity because that has the effect of giving me the right for summary judgment and preventing the defendant from presenting any evidence of that. And actually, I think it's a judicial admission as well. But this court doesn't have to find that. If this court finds it's an evidentiary admission, it must reverse the case, just as happened in the Fourth District case of Evans v. Brown, where a defendant was noted, or the decedent was noted as saying, I fell asleep. And then there was all sorts of other evidence saying he blacked out or whatever. But nevertheless, the fact that there was that one little snippet, I fell asleep, that was an evidentiary admission, which required reversal of summary judgment. I believe it is a judicial admission because it wasn't some chance statement. Dr. Tarter would not say, I'm responsible for the injury. I'm the captain of the ship, to the client, and then repeat it in his deposition that occurred, you know, a year later. And defense counsel never explained that admission in the deposition. It was there. It wasn't some chance statement by a nervous party. Counsel, let me ask you this. You say that the doctor said he was responsible and that is an accurate statement. He did say that, but is he legally responsible? Is there a difference? He is. In medical negligence cases, the legal system adopts the medical standards of care. I.e., they say, you know, we as judges and as lawyers aren't competent to say what doctors can or cannot do. We don't know what their standards of care are. Doctors do. And that's why in the specific instance of a situation where you're talking about what a doctor does,  So basically you believe he was saying I deviated from the standard of care. Yes, because the common ordinary dictionary definition of responsible means liable for, accountable. As I said in my brief, I quoted American Heritage dictionary definition. Yes, it means I'm responsible. I did it. It's the same thing like if somebody says, I ran a red light. That's admitting responsibility for the injury. The second major issue is the issue of informed consent. And that is whether a doctor has the responsibility to give truthful answers to a patient's questions about his experience in performing the procedure. Again, this issue is ignored by the defendant. All he argues is that a doctor has no duty to volunteer his lack of experience. But that's not what plaintiff is resting their case on. Plaintiff is resting their case on that when he was called by the doctor's nurse saying, do you want to have a robot do this surgery on you? And the plaintiff asked the nurse who was speaking for the doctor, does the doctor have experience doing this procedure? And the nurse said, yes. That's a whole different issue. We as patients have the right to decide whether or not we want to be guinea pigs. And if Dr. Pavlovich testified that a doctor has an obligation to disclose his lack of experience, if asked, the Tenth Circuit Court of Appeals, Willis v. Bender, said as a matter of law, if asked a specific question by a patient, the doctor has the responsibility to give truthful answers. The other non-issue related to this issue of non-informed consent is defendant contained, the defendant argued that Dr. Tarter had no obligation to say that there was a risk of a median nerve injury. But when we are talking about whether or not the plaintiff wants to be a guinea pig, the doctor's first case, that issue isn't relevant. Instead, what is relevant is whatever the risks are involved in a first case. And plaintiff produced abundant evidence that there were risks of undergoing a first surgery. Dr. Pavlovich testified that robotic first cases take much longer than for cases with experienced doctors. All three doctors, Dr. Pavlovich, Dr. Neumeister, and Dr. Tarter all admitted that the longer the surgical procedure goes, the more likely there is of a nerve injury. Dr. Tarter produced an article in his deposition saying it takes at least ten cases before a doctor reaches four-hour proficiency in doing this robotic procedure. And then I presented some wonderful secondary sources in my brief about Atol Gawande saying, no matter how many protections we put in place, on average, these cases go less well with a novice than with someone experienced. It happens. And that was plaintiff's choice not to be a guinea pig. He didn't want to be. The third issue which defendant ignores is the standard of care by which Dr. Tarter's conduct is to be judged with regard to the length of procedure. Is it by a rookie standard or is it by a reasonably well-qualified doctor? Dr. Pavlovich testified that an experienced surgeon does this procedure in one to two hours. A less one does it within two to three hours. And five hours by any standards is two hours. Did the process for opine that the doctor deviated from the standard of care? He did. But he also was impeached. No question. He opined that there was a deviation from the standard of care in his report that was admitted as part of Dr. Tarter's deposition. Dr. Pavlovich said that in his report, he said that the most likely contributing factor to the injury was improper pressure distributed to these areas intraoperatively. He said that also in his report, the basis for suing is improper positioning or padding or both and the length of anesthesia. Dr. Pavlovich said that in his report, the result of a double crush injury was not within standards of care. That's in his report. He said that there was a clear adverse outcome, an extended period of pressure. But didn't he say that this injury wasn't reasonably foreseeable? What he said was the fact that this particular nerve injury, you know, it was a median nerve injury as opposed to a peripheral nerve injury. That that only happens in one out of every 200 cases. And that no, a doctor wouldn't look at that, that wouldn't be a basis for telling that patient that. But the law is, it's not the particular injury that needs to be foreseen, but in fact, the general nature. And there is abundant evidence that the longer a procedure goes... The general nature of this injury was a pressure injury, correct? Correct. And didn't he say, Dr. Pavlovich, that a pressure injury of this sort was exquisitely rare in this type of procedure? At one point... In his words, I think. That is correct, he did say that. But he also said that the longer a procedure goes, the more likely that peripheral injuries will occur. He said that nerve injuries are a well-known consequence of peripheral injuries. So I tell you, Dr. Pavlovich did not give a good deposition for the plaintiff because he contradicted himself. I mean, you are correct. He said that. But he also said the operation went too long. He said that with longer period of time, positioning injuries are a well-known fact. And the Supreme Court in Gatlin v. Ruter said, even if an expert contradicts himself, summary judgment cannot be awarded. It's still a question of fact. And I want to tell you, if you look at the facts of the Gatlin v. Ruter case, the contradictory testimony by the expert in that case was unbelievable. But the court said the trial court cannot weigh the evidence. And so even though, yes, Dr. Pavlovich was impeached on that point, at other points he said, nerve injuries are a well-known consequence of wrong procedures. And so it's contradictory, but so what? This was a matter of summary judgment, and the trial court cannot weigh the evidence. I thought he also said something about the way he was wrapped and positioned was within the standard of care. That is true, but what he said is, and I think he made a wonderful analogy, yes, you can follow a recipe, but that doesn't necessarily mean you're going to make a good cake. After all, Dr. Pavlovich's only basis is looking at the operative report. He wasn't there. And so, yes, the operative report reads, yes, I did steps A, B, and C. But just as Pavlovich said, you can make a cake following a recipe, but you can make a very bad cake. But was the bad cake because of the preexisting condition in your client? No, because of the, obviously the preexisting condition may have helped, but that would not have occurred had it not been for the surgery. And the length of the surgery increases the risk. Dr. Neumeister talked about the fact that there is an enclosed envelope, and the more, the length of time, more fluids going in throughout the course of a surgical procedure increases the compression, increases, because it's a fixed space, and that happened. And Borowski versus Solbrick, I do not have to provide evidence that a better result would have been obtained. Again, with regard to the issue of foreseeability, it's only the general nature of the harm, not the specifics. I mean, heck, in Marshall versus Berger, that's the Supreme Court case where a car went through a brick wall into a restaurant, into a glass restaurant. Court has bets foreseeable. How often does that occur? One in a million cases? One in a billion? How many cars are on the road? Lee versus Chicago Transit Authority. Only unless it's highly extraordinary will there be a lack of foreseeability. That was a drunk walking on a third rail. Nowhazzy versus Nelson. Again, a very helpful case. And that said, once a surgery is extended beyond what's reasonable, the particular injury may not be foreseen. So, yes, there was abundant evidence that, again, this was a rookie procedure. It takes longer, and the risk of injury goes up with the length of the procedure. I also asked for leave to amend, and the court said where there's leave to amend, that a trial court abuses its discretion in not allowing leave to amend if a cause of action can be stated. And that leave to amend should be liberally allowed. And the most important factor in granting leave to amend is whether or not the defendant would produce any prejudice. The defendant hasn't shown any prejudice in this case. None. Instead, their sole argument says, okay, since the court's granting summary judgment, you can't amend your complaint. But you don't need to have undisputed evidence to amend a complaint. That's not part of the criteria. With regard to St. John's, St. John's Hospital presented no evidence in support of a motion for summary judgment. It popped up and said, after Dr. Tarder made its argument, it said, oh, we join the motion for summary judgment. That's not permissible. That's not permissible because of the fact that St. John's didn't provide any evidence indicating it was entitled to summary judgment. It was offered only at the time of hearing, with plaintiff having no chance to respond. In a recent case decided by, and I'm not sure why it says 4th District, because it looks like it's a 5th District panel, but Pontiac National Bank v. Vallis decided that if a party presents a motion for summary judgment on the eve of trial and plaintiff was not responded, provided with adequate notice of the motion, that that alone should be a reason for denying the motion. So for those reasons, I would request that this Court reverse the award of summary judgment and actually find that Dr. Tarder's admission was indeed a judicial admission, but at the very least an evidentiary admission, and remand this matter back to the trial court. Thank you. Thank you, counsel. Mr. Romerath? Thank you, Your Honor. Good morning. Good morning, counsel. May it please the Court. At the outset, I'd like to address the purported admission that Dr. Tarder allegedly made. I think in this day and age it's pretty rare to find anyone, much less a physician, willing to express with such candor. I'm in charge. I'm the one that's in charge in an operating room, and I think it's refreshing, quite frankly, and I think that it's unlikely that he will ever do it again, unfortunately. Here's the problem with that entire argument. The question is this. Did he know, did he understand what he was accepting responsibility for? Now, when Mr. Balding came out of surgery, no one knew what the problem was. They sent him to a neurologist. He took a CT scan of his neck. He thought it was a centralized problem. He finally went to Dr. Neumeister. He couldn't figure it out. Four months after surgery, Dr. Neumeister performed a surgery on his arms, and that's when he finally found out what was causing Mr. Balding's symptoms. So the reason that Dr. Tarder's so-called admission is irrelevant to these proceedings is that he had no idea what he was talking about. He had no idea what was the cause of the injury. He had no way of knowing if it was some mistake he had made or if it was some congenital defect or what. All he was doing was making a general expression that I'm the one that's in charge. Is that a fact question, though, that should go to a jury and not be subject to a summary judgment? I don't believe so, Your Honor. I think that if he had had some knowledge at all as to what was the cause of this, if there was a possibility that he was accepting responsibility for conduct that he engaged in, then I think that you may have a jury question. In this case, he had no idea. Well, is this court supposed to be looking at this as counsel has argued, as an evidentiary admission versus a judicial admission? Can you get into that a little more? I think that as an evidentiary admission, it's irrelevant. It's merely a simple comment designed to reassure his patient. And so you're saying we should analyze this as whether it's a judicial admission? I think that under either standard. I think under a judicial admission, it cannot possibly be characterized as a judicial admission because by law, judicial admission cannot be a statement of opinion. It has to be a statement of concrete fact. That's clearly not the case here. He had no idea what caused this injury. So we're dealing with an evidentiary rule, an evidentiary admission. Even under that standard, does that change anything when he is apparently making a comment, accepting responsibility for something that he does not even have any clue as to how this happened? I don't see how it's relevant. I don't see how it's relevant at all. I think the question in this case is whether a surgeon who fully adhered to the standard of care in every respect can nevertheless be found liable for an extraordinarily rare complication, one that even plaintiff's expert admitted was unforeseeable. Now, it's essential to understand at the very outset that this complication could have occurred even if the open procedure had been used. Dr. Neumeister, he testified that a compression injury can occur in any surgery lasting over two hours. Plaintiff's expert disagreed with that assessment. He said, no, it's not two hours. Any surgery over 30 minutes, 30 minutes to 90 minutes is sufficient to create a compression injury in surgery. Now, think about what that means. First of all, it means that the decision to do this surgery robotically was not the cause of the injury. This could have happened, an open method surgery takes three hours. It could have easily occurred there. Another thing, though, is that when Dr. Pavlovich described the relative experience of robotic surgeons, I don't know if that's really a good way of saying that. Perhaps surgeons who perform robotic surgery. He said that among the most experienced surgeons, the kind that do 200 robotic procedures every year, he goes, they can do this in an hour or two. Well, that's sufficient time to have a compression injury. But doesn't the likelihood increase of compression injury the longer the person is strapped into the downward-facing position that this patient was? And we directed that question right to him. And he said he could not quantify that. He said, look, this is such an extraordinarily rare complication. He said, I can't tell you how much the risk increases, if any, the longer this surgery takes place. And he gave an example. He said, look, let's say that there's a risk of one-tenth of one percent. That was his example. He said, you multiply that risk by five times, and he goes, and still all you have is one-half of one percent. He says it's still negligible. This is an extraordinarily rare complication. Now, we're here on a motion for summary judgment, an order granting a summary judgment. Plaintiffs need not prove their case, but they must provide a factual basis that arguably entitles them to judgment in their favor. They must establish a standard of care, and they must show that Dr. Tartar failed to satisfy that standard. So look at the allegations of the complaint. Where did Dr. Tartar go wrong? They allege that he improperly positioned the plaintiff. Well, their own expert, Dr. Pavlovich, testified that he did not deviate from the standard of care in that respect. And this is where the comment about the good cake, bad cake example came up. He said, you can do everything properly and follow all the rules. Sometimes you'll have a great cake, and sometimes you'll have a bad cake. What he's saying is that this type of injury, this extraordinarily rare injury complication, can occur even when you follow all the rules. The next allegation of negligence, that the surgery took too long. Dr. Pavlovich disagreed. He said that the length of the surgery was appropriate. He found no breach of the standard of care. The allegation that they failed to check the position of the patient. Now this one's interesting. Turns out Dr. Pavlovich said that this can usually cause more harm than good. Now if Dr. Tartar had changed the positioning or checked the positioning of the patient, we may very well be defending that as a breach of the standard of care. Now apparently the report that the doctor gave was more favorable to the plaintiff's case than his deposition. And Mr. D'Souza says, well, even if he contradicted himself, Gatlin versus Reuter says, that doesn't allow you to grant summary judgment. It's a question of fact. The deposition is a chance to explore the conclusions that he came up with in his report. And when we're dealing with impeachment, that we have weakened his argument, where we have found flaws in his conclusion, that goes to the weight of the evidence. That's something for a jury. But when you ask an expert point blank, did Dr. Tartar deviate from the standard of care, and he says no, at that point summary judgment is appropriately granted. So the Gatlin case is not binding on this court? I do not believe so, Your Honor. There was not the same level of distinct and explicit statements that the defendant physician fully complied with the standard of care. Now I'd also like to point out that Dr. Tartar So then your argument is that as far as Gatlin goes, you have no problem with the point of law it makes. You're just saying that it's distinguishable from what happened here? Yes. Okay. Yes. And I think in the end we come to one final conclusion. After Dr. Pavlovich went ticked down each and every allegation and admitted that there was no deviation or breach of the standard of care, we actually came up with the million dollar question. Was the surgery performed competently and within the standard of care? And he agreed that yes, it was. And at that point we look at a situation where how can we possibly hold a physician liable where plaintiff's own expert says that he performed the surgery competently and within the standard of care? No injury can be attributed to the use of robotic procedure, nor can it be attributed to Dr. Tartar's lack of experience. Well, was plaintiff entitled to know this was Dr. Tartar's first robotic surgery? According to plaintiff's own expert, no, he was not. He said this is not something he would ever disclose, and he found no violation or breach of the standard of care in that respect. But the patient inquired about it, and then don't they have a duty to tell the truth? Absolutely. And when you look at Mueller's testimony, this is the nurse that spoke with him, she flat out said, she goes, I did not lie. And when they asked her about the details of the conversation, like the plaintiffs themselves, her recollection was not very clear. The plaintiffs were unable to provide very many details at all. What she did say is, all she could say was, if I was asked this, I would have answered it in that fashion. But she was adamant about one point. She said, I did not lie and never would. Now, the informed consent issue comes down to two points. There is a duty to disclose material risks, and if you're going to successfully pursue this claim, you must prove that the plaintiff was injured by the proposed treatment, and that's where it falls apart. That's where we have, there is no evidence, no evidence whatsoever, that the patient was injured by the choice of doing this surgery robotically. I just want to make sure that my time is not running out. The counsel also raised the issue of proximate cause. The counsel suggested that you don't have to look to the injury, to the particular injury. It's just as to whether any injury at all was reasonably foreseeable. So in other words, the plaintiff's counsel is trying to take this away from the notion that the immediate compression injury is such a rare complication. In support of that, she cites the Colonial Inn Motor Lodge v. Gay, a case that I was marginally involved with myself many, many years ago. If you look at that ruling, they were talking about duty, the foreseeability element of duty. They were not talking about proximate cause. As a matter of fact, the court lays it out. It says when you're talking about foreseeability in the context of proximate cause, then you do look to the particular injury and whether that particular injury was foreseeable. And what case is that again, counsel? That is Colonial Inn Motor Lodge v. Gay. Thank you. And I'm confident that the court will see that that case does not stand for the proposition asserted. To sum up, Your Honor, I believe that Dr. Tarter performed this surgery competently and within the standard of care. That's not just my opinion. It's the opinion of plaintiff's own expert. Under these circumstances, we see no alternative but to have this court affirm the order granting summary judgment. How about the amended complaint? Could you address that very quickly? Thank you, Your Honor, for reminding me of that. The amended complaint, the court looked at every allegation in the amended complaint and realized that none of them were capable of being cured by amendment. And this is because of Dr. Pavlovich's explicit testimony that there had been no breach of the standard of care. Thank you. Thank you, counsel. Seth? Good morning, Your Honors. Good morning. I'm here today on behalf of St. John's Hospital, and I just have a few points that I'd like to address. First, as this court's aware, St. John's Hospital's motion for summary judgment was orally made by counsel and not sui sponte by the court. Oral motions for summary judgment are permissible under Illinois statutes governing summary judgment, and thus the hearing of our motion orally by the court was permissible. Second, counsel raises the advance notice regarding our oral motion claiming that she was prejudiced by not having time to properly respond. Also, as this court's aware, we simply adopted the argument of our co-defendant as it would apply to St. John's Hospital, specifically the foreseeability of this particular injury as a proximate cause. And for those arguments, counsel had ample opportunity to prepare and respond, as this, I believe, was briefed and scheduled eight months after initial arguments had been filed. So plaintiff was not prejudiced by St. John's simply adopting the same argument that had already been made by co-defendant. Counsel did raise the Pontiac National Bank v. Vail's case, which does indicate that it was heard by this particular court. In that case, however, it does not stand for the proposition of law that counsel has indicated. That proposition that she refers to is a defendant on the eve of trial raised for the first time new arguments never before presented, raised, or briefed, and the trial court allowed that. And this particular court or the panel determined that, in their opinion, the court should not have allowed that due to lack of notice. However, that was not an issue on appeal. The plaintiff had not actually raised that issue during the appeal. The actual appeal was with respect to the arguments on summary judgment, not whether or not it was appropriate for it to be heard. And therefore, the notice aspect is definitely distinguishable from this particular case. Finally, with respect to foreseeability and the proximate cause, my co-counsel did an excellent job of explaining the difference between the legal foreseeability as the proximate cause foreseeability. And we're not referring to the foreseeability element with respect to legal duty for the nurses in this particular case. That is not before the court today. That was not raised in the trial court. What we raised in the trial court was that the actual injury, the cause in fact, and the legal cause was not foreseeable. And therefore, because it was not foreseeable, we were entitled to summary judgment. The standard in First Springfield Bank and Trust v. Gaumann indicates that the injury must be the type of injury that a reasonable person would see as a likely result of his or her conduct. And there is no evidence in the trial court that the conduct of the nursing staff would create or that what a reasonable person would see as a result or the injury that Mr. Balding received would be a result of any of the nurses' conduct. And there is no evidence before the trial court that, and this court, that the injury was in fact foreseeable to any party, let alone the nursing staff. And it is this lack of foreseeability related to the legal and proximate cause and the cause in fact that the plaintiff cannot establish with respect to St. John's Hospital. Because she cannot establish that particular element of her cause of her prima facie case, St. John's Hospital was properly granted summary judgment. Thank you, counsel. Mr. St. Paul, do you have a rebuttal? Thank you. Dr. Tartar's admission that he was responsible for the injury is not refreshing. It is really dismaying. The fact that he said that at the time, he said that in his deposition, in his deposition he never gave any explanation. Oh, I didn't know the cause of that injury, so that's the reason why I made that admission. He didn't say that in that deposition, and yet Dr. Tartar and his counsel had advance notice, at least two months advance notice, that that question was going to come up because the plaintiff had already testified in his deposition that Dr. Tartar told him that he was responsible for the injury. And that that was the fact. So this is not refreshing. It clearly is an evidentiary issue, and the court on summary judgment cannot weigh the evidence, regardless of whether he knew the cause or not. That goes to the weight of the admission. Certainly if you look at the Fourth District's case, Evans v. Brown, about the I fell asleep, again, that was just such a minute little comment. Nevertheless, the Fourth District said, hey, that's an evidentiary admission. There's all kinds of things that he blacked out, etc., but it's an evidentiary admission. It bars the award of summary judgment. Do we have that kind of specificity in this case with respect to the alleged admission? What do you mean? I fell asleep versus I left something inside you? Well, I think you can't get any more specific than I am responsible for the injury. I am the captain of the ship. That is very specific, and that is a global admission of responsibility. Moe v. Kang. Also, I cited a Supreme Court case involving the Internal Revenue Department, where answers to interrogatories indicating an opinion about liability are admissions. They are, at the minimum, evidentiary admissions, barring the award of summary judgment. With regard to standard of care, Dr. Pavlovich said that Dr. Tarter, at one point, he said that the length of surgery was acceptable for a first case. That's not the standard that this Court should be reviewing. It's the standard of a reasonably well-qualified surgeon, not someone doing a rookie procedure. At other points in his deposition, Dr. Tarter said this procedure was too long by any standard. That bars the award of summary judgment. With regard to lying to a patient, this Court has to interpret the evidence in the light most favorable to the plaintiff. And in that light, absolutely, the nurse told the patient he's done these before, he hadn't. That's a lie. That was something that the patient was entitled to know by Dr. Pavlovich's own testimony. Counsel, you heard the opposing counsel's argument that the colonial end case actually involved an issue regarding duty, not proximate cause. Do you agree with that? You know, I'd have to go back and look at that case. It may, but when you get down to it, trying to distinguish proximate cause versus duty versus causation gets to be a very intertwined subject. And it's very, very difficult to distinguish them. The fact is, Dr. Pavlovich said, in fact, he said, the longer a procedure takes, and I'm reading from the record, actually, not just creating stuff, the longer a procedure takes, a urological procedure takes, the more complications occur, particularly positioning-related complications. That indicates it was foreseeable. It happened. One out of 200 cases is not all that rare. I mean, my goodness. So would you find for me the portion of the deposition where the doctor said that this surgery took too long? Sure. At page C400, pages 28-29. Okay, I'm looking at the appendix. That deposition starts at A-19. Yeah. Okay, so where is it? It's at C400, pages 28-29. C400 of the record, pages 28-29, where he says the cause of the injury was a very long, by any standard, surgical case in an upside-down position with an arm secured. At page 54 of Dr. Pavlovich's deposition, he said, the surgical operation took an extended length of time, two to three times longer than Dr. Tarter had done with open prostectomies. So those were two cases where he said it took too long. Another case where he said is that we will not allow a surgery to go beyond five hours. That is the absolute limit. And he said that at page 99. Five hours is a threshold for too long. Page 102. For us, his surgery was too long. So again, there were numerous points where Dr. Pavlovich said this surgery took too long.